IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

PHILLIP BLUMBERG            :
       Plaintiff
                        :
   v.                                   Civil Case No. L-10-441
                        :
HARBOR HOSPITAL, INC.
                        :
       Defendant            :

o0o
**MEMORANDUM**

    Plaintiff Phillip Blumberg brings this action against his former employer, Harbor Hospital, Inc. ("the Hospital") alleging wrongful termination in violation of the Family And Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq. Now pending before the Court are the parties' cross-Motions for Summary Judgment. Docket Nos. 13 and 15. The issues have been comprehensively briefed, and on May 12, 2011 the Court heard argument on the Motions. For the reasons stated herein, the Court awards summary judgment to the Defendant.

    **I.    BACKGROUND**

    The facts of this care are largely undisputed. Phillip Blumberg was employed as a respiratory therapist at Harbor Hospital from September 2, 2003 until July 9, 2009, when he was terminated. At various times during the course of his employment, Blumberg was approved for both intermittent and continuous leave under the FMLA for a variety of conditions and circumstances.[1] From 2005 through 2009, Blumberg took leave on several occasions without

---

[1]     Specifically, Blumberg was approved for the following FMLA leave:
- Intermittent leave July 15, 2005 to January 15, 2006. Approved for 4 days per month.

incident. At the time of his termination, the Hospital had approved Blumberg for intermittent leave for depression, allowing him to take off one to two shifts per month, as needed. See Def.'s Mot. Summ. J. Ex. D.3 (FMLA Leave Request Approval). As permitted by the FMLA, the Hospital required Blumberg to take his unused vacation time as leave before taking unpaid time off.[2]

The events at the center of this dispute took place on July 4, 2009. Blumberg was scheduled to work the 12-hour day shift beginning at 7:00 a.m. He clocked in at 6:22 a.m. but then, instead of proceeding to his duties, told the other therapists that he was experiencing a mental breakdown and could not work. Blumberg Dep. 22. He sat in the hospital chapel, walked around, sat in his car, talked to coworkers, ate lunch, and checked his bank account before finally clocking out at 1:20 p.m., having performed no work. Id. at 25–28. Before leaving, he wrote a notation on the duty schedule next to the box for July 4th reading "1/2 day vacation." Def.'s Mot. Summ. J. Ex. D.5 (Respiratory Thearpy [sic] Schedule). Because July 4th was a holiday, Blumberg was paid at 150% of the normal rate for 6.5 hours of work.

On July 7th, Blumberg's Supervisor and Department Manager met with him to discuss the events of July 4th. They suspended Blumberg and, following consultation with an attorney from human resources, decided to terminate him. The notice of disciplinary action effecting the termination stated that Blumberg was on the clock but participated in no patient care or departmental business, that the therapist in charge was unaware of Blumberg's activities or

---

- Intermittent leave February 7, 2006 to August 6, 2006 for parents. Approved for 8 days per month.
- Intermittent leave August 7, 2006 to February 6, 2007 for parents. Approved for 1–8 days per month.
- Intermittent leave May 29, 2007, to November 28, 2007 for parents. Approved for 1-8 days per month.
- Continuous leave May 26, 2009 to May 29, 2009 for self. Back strain.
- Continuous leave June 4, 2009 to June 8, 2009 for self. Broken toe.
- Continuous leave June 22, 2009 to June 26, 2009 for self. Strep throat.

Def.'s Mot. Summ. J. Ex. D.2 (FMLA Leave Request Approvals).

[2] The FMLA provides that "[a]n eligible employee may elect, or an employer may require the employee, to substitute any of the accrued paid vacation leave, personal leave, or family leave of the employee . . . for any part of the 12-week period" of yearly leave to which the statute entitles eligible employees. 29 U.S.C. § 2612(d)(2)(A).

whereabouts, and that Blumberg clocked out without permission, almost six hours prior to the 7:00 p.m. end of his shift. Def.'s Mot. Summ. J. Ex. D.8 (Notice of Disciplinary Action). It also stated that by being absent without permission, Blumberg had potentially placed patients in jeopardy. Id.

Blumberg appealed his termination, and the head of another department upheld the decision. See Def.'s Mot. Summ. J. Ex. D.9. Blumberg appealed this ruling as well. The Vice President of Patient Care Services, Lenora Addison, upheld the termination, but revised the termination document to eliminate the reference to abandonement of patients. See Def.'s Mot. Summ. J. Ex. D.10; Def.'s Mot. Summ. J. Ex. D.11. Addison found that Blumberg, despite being advised soon after arrival that he should leave, nonetheless determined that he would have to work until at least 1:00 p.m. in order to get time-and-a-half pay for working the July 4th holiday. Id. A witness interviewed during the investigation confirmed that, one week earlier, Blumberg had told him "If I'm here until one it's not an occurrence." Def.'s Mot. Summ. J. Ex. D.7 (Aff. of Michael Willinghan). Hospital policy provides that an absence "occurrence" is assessed if an employee misses 50% of a scheduled shift, and can result in disciplinary action. See Def.'s Mot. Summ. J. Ex. D.14 (Attendance Policy). Based on this information, Addison concluded that Blumberg's actions were "fraudulent with the intent to deceive" and upheld his termination on this basis. Def.'s Mot. Summ. J. Ex. D.11.

Following Addison's final decision, Blumberg filed the instant suit alleging retaliation in violation of the FMLA. He asserts that his actions were proper, and that he was fired for taking FMLA leave to which he was entitled. Discovery having been completed, both parties now move for summary judgment.

## II.     LEGAL STANDARD

The Court may grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986); see also Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987) (recognizing that trial judges have "an affirmative obligation" to prevent factually unsupported claims and defenses from proceeding to trial). Nevertheless, in determining whether there is a genuine issue of material fact, the Court views the facts, and all reasonable inferences to be drawn from them, in the light most favorable to the non-moving party. Pulliam Inv. Co. v. Cameo Props., 810 F.2d 1282, 1286 (4th Cir. 1987).

"When both parties file motions for summary judgment . . . [a] court applies the same standard of review." McCready v. Standard Ins. Co., 417 F. Supp. 2d 684, 695 (D. Md. 2006) (citing Taft Broad. Co. v. United States, 929 F.2d 240, 248 (6th Cir.1991)). Furthermore, "each motion [will be considered by a court] separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003).

## III.    ANALYSIS

The dispute between the parties centers on the meaning of Blumberg's "1/2 day vacation" notation. Blumberg contends that it was intended to signify that he wished to use FMLA/vacation time to cover the first half of his shift, during which he was on the clock but performed no work, and that it went without saying that he would also use FMLA/vacation leave

for the second half. He urges that the fact that he was, in fact, paid at time-and-a-half for the morning portion of his shift was an error on the Hospital's part for which he was neither responsible nor obligated to correct. It was his use of any leave at all, he alleges, for which he was wrongfully terminated in violation of the FMLA.

The Hospital, by contrast, asserts that it saw Blumberg's combined actions and schedule notation as a fraudulent attempt to receive time-and-a-half pay for the morning as though he had worked, and that Blumberg sought to be charged FMLA/vacation time only for the afternoon. The Hospital argues that it is entitled to summary judgment because there is no evidence that its decision to terminate Blumberg, even if mistaken, was in retaliation for his use of FMLA leave. The Court agrees.

In general, the FMLA entitles eligible employees to (1) take up to twelve weeks of unpaid leave in qualifying situations, (2) maintain health benefits and other employment-related benefits while on leave, and (3) be reinstated to their previous position or an equivalent position at the end of the leave. 29 U.S.C. §§ 2612, 2614. The FMLA also makes it unlawful for an employer to interfere with, restrain, or deny the exercise of any of these rights. 29 U.S.C. § 2615(a)(1). The statute contains two provisions that prevent retaliation by employers. First, § 2615(a)(2) provides that "[i]t shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." Second, § 2615(b) provides:

> It shall be unlawful for any person to discharge or in any other manner discriminate against any individual because such individual-
> (1) has filed any charge, or has instituted or caused to be instituted any proceeding, under or related to this subchapter;
> (2) has given, or is about to give, any information in connection with any inquiry or proceeding relating to any right provided under this subchapter; or

5

> (3) has testified, or is about to testify, in any inquiry or proceeding relating to any right provided under this subchapter.

While neither section specifically refers to retaliatory discharge for taking FMLA leave, 29 C.F.R. § 825.220(c) interprets these sections as providing that "[a]n employer is prohibited from discriminating against employees or prospective employees who have used FMLA leave." It also provides that "employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions, or disciplinary actions." Id.

FMLA claims arising under the retaliation theory are analogous to those derived under Title VII and so are analyzed under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Yashenko v. Harrah's NC Casino Co., LLC, 446 F.3d 541, 550–51 (4th Cir. 2006) (citing Nichols v. Ashland Hosp. Corp., 251 F.3d 496, 502 (4th Cir. 2001)). Thus, to succeed on his retaliation claim, a plaintiff must first make a prima facie showing "that he engaged in protected activity, that the employer took adverse action against him, and that the adverse action was causally connected to the plaintiff's protected activity." Cline v. Wal-Mart Stores, Inc., 144 F.3d 294, 301 (4th Cir.1998). If the plaintiff puts forth sufficient evidence to establish a prima facie case of retaliation, and the employer offers a non-discriminatory explanation for his termination, the plaintiff then "bears the burden of establishing that the employer's proffered explanation is pretext for FMLA retaliation." Nichols, 251 F.3d at 502.

The Hospital does not dispute that Blumberg satisfies the first and second elements of a prima facie case. He took some amount of FLMA leave, to which he was entitled, and suffered an adverse employment action in the form of termination. It argues, however, that Blumberg cannot establish a causal connection between the two. On this point, Blumberg has submitted no direct evidence tending to show that his termination occurred as a result of his use of FMLA

leave. Instead, he argues that because his termination occurred a mere five days after his use of leave, the timing of the events gives rise to the inference of a causal connection.

Generally, while evidence as to the closeness in time "far from conclusively establishes the requisite causal connection, it certainly satisfies the less onerous burden of making a prima facie case of causality." Williams v. Cerberonics, Inc., 871 F.2d 452, 457 (4th Cir. 1989). On the other hand, a temporal proximity inference is generally used to weaken an employer's claim that the employee's use of leave and the termination are completely unrelated, a circumstance not present in this case. Closeness in time is also significantly more probative in a case in which the plaintiff has not previously taken extensive leave without repercussion. Still, the Court may assume, without deciding, that the short time between Blumberg's use of leave and the Hospital's decision to end his employment is sufficient to make out a prima facie case.

Blumberg has failed, however, to offer any evidence whatsoever that the Hospital's asserted grounds were pretextual. On the subject of pretext, he argues only that "Defendant's legitimate non-discriminatory explanation for terminating Plaintiff is a non sequitur." Pl.'s Mot Summ. J. 10. He then asserts, without explanation, that "[t]he evidence supports Plaintiff's actions" and insists that "[t]he proximity of the termination to Plaintiff's exercise of his rights, is compelling evidence that the use of the leave was the cause of the termination." Id. at 11. It is, of course, no such thing. While timing may, in some circumstances, be enough to draw an inference of causation, it is not evidence of the same. As other courts have noted, "once the employer offers a legitimate, nondiscriminatory reason that explains both the adverse action and the timing, the plaintiff must offer some evidence from which the jury may infer that retaliation was the real motive." McCoy v. City of Shreveport, 492 F.3d 551, 562 (5th Cir. 2007).

The Court notes in passing that it is Blumberg's explanation for his behavior, and not the Hospital's, that strains for coherence. Even were that not the case, however, "[i]t is not our province to decide whether the reason was wise, fair or even correct, ultimately, so long as it truly was the reason" for the employment decision. Dugan v. Albemarle Cnty. Sch. Bd., 293 F.3d 716 (4th Cir. 2002). The Court in employment discrimination cases do not sit as a "super-personnel department weighing the prudence of employment decisions . . . ." DeJarnette v. Corning Inc., 133 F.3d 293, 299 (4th Cir. 1998).

In support of the integrity of its decision, the Hospital has put forth evidence establishing that it has a consistent practice of terminating employees who it believes have falsified time entries. In fact, it has submitted documentation relating to five other employees who have been fired for similar infractions. See Def.'s Mot. Summ. J. Ex. D.16 (Disciplinary Notices). In Blumberg's case the Hospital conducted a thorough investigation and had the conclusion reviewed, first by the disinterested head of another department, and second by the Vice President of Patient Care Services.

Following the hearing, the Court posed a set of additional questions to counsel, to be addressed in supplemental briefing. The information supplied in response further undercuts Blumberg's contentions of discrimination. The Hospital's counsel pointed out that prior to the incident in question Blumberg's job performance had been good, and that he had received favorable reviews. See Docket No. 22 at 1. Counsel also stated that unscheduled absences among employees in Blumberg's department were not uncommon, and that routine procedures were in place for dealing with such absences. Id. at 1–2. Counsel proffered without opposition that Blumberg's use of FMLA leave did not create a burden, in terms of scheduling or otherwise, that would be eased if he were replaced. Id.

In sum, there is no evidence from which a reasonable jury could conclude that Blumberg was terminated in retaliation for taking FMLA leave and that the Hospital's proffered reason was mere pretext. The Hospital is entitled to summary judgment.

### IV.     CONCLUSION

For the foregoing reasons, the Court will, by separate Order of even date, GRANT Harbor Hospital, Inc.'s Motion for Summary Judgment (Docket No. 13) and DENY Blumberg's Motion for Summary Judgment (Docket No. 15).


Dated this 14th day of September, 2011

/s/
_____
Benson Everett Legg
United States District Judge